(Cuyahoga County Common Pleas.)

RAY F. CHRISTY v. THOMAS H. GROVES.

---

*Injunction to prevent use of buisness name and the publication of libelous matter* —A court of equity will enjoin the purchaser of a stock of goods, the good will of the business not being transferred, in carrying on the business in the name under which it was conducted by the seller, and also from advertising the said business under said name in a newspaper or otherwise, and from publishing thereby any libelous matter affecting the credit or business standing of the seller.

---

HAMILTON, J.

The complaint in this case is that on the 2d day of November, 1892, the plaintiff, doing business in the city of Cleveland under the name of "The Christy Clothing Company," sold to the defendant the stock of goods used by him in said business. He did not transfer to the defendant the good will of said business, nor any right to use

said name of "The Christy Clothing Company", or of this plaintiff. Since the sale the defendant, by means of advertisements in the newspapers and on the building, and by placards, handbills and otherwise, has been using the name of "The Christy Clothing Company," and of this plaintiff, and has been advertising the sale of said stock by plaintiff to defendant as made in consequence of legal action taken by creditors of this plaintiff, and at a sheriff's sale, and advertising the sale made to him on said stock as a sale of bankrupt stock, all of which is untrue, and by means of doing which, the credit of this plaintiff and his good name as a mechant is in great danger of being injured to an extent incapable of being ascertained or compensated for by damages. And that he is about to continue this action unless restrained by this court, and refers to the fact that every publication adds to that injury and damage which is done, and an injunction is prayed for in this case to stop further publications, etc. It is said the defendant promised, on a certain occasion that he would not do these things, and it is said the sale never would have been completed had he not made this promise, and hence an injunction is asked, prohibiting this kind of conduct on the part of the defendant.

A demurrer was filed to the original petition, an amendment was permitted to this, and the demurrer to the petition renewed to the petition as amended, the petition as amended containing an averment as to the promise that he would not do so after sale. That demurrer, it seems from the record, was overruled, and a motion was also filed by the defendant to discharge the order heretofore granted restraining the defendant from continuing these publications. The case is referred here upon the application by the plaintiff to make an order granting a temporary injunction in the case, and also on a motion to dissolve the restraining order. Practically, of course, they are the same thing, and the court is now called upon to determine whether the facts in this case, as they appear by the pleadings and affidavits, are sufficient to warrant the equitab'e interference of this court by injunction. It is said, in the first place, that, independently of any question of promise or contract not to make these publications, the plaintiff has a right to enjoin the defendant from making the libelous and scandalous publications which attack his character and reputation as a business man; that there would be a great multiplicity of suits (if he is turned over to the law) to be brought, if he must bring a suit in tort for every libelous publication that is made, and that there would be no way of determining the extent to which each publication has caused damage; and, therefore, equity should take jurisdiction. On the other hand it is said that that is not true; that by the constitution of the State, and by the policy of the law, no man can be restrained in advance from publishing or speaking what he may see fit to

speak or publish, being liable only in an action at law for the abuse of the right thus guaranteed to him. In a case reported in the 13 Weekly Law Bulletin, 335, a former judge of this court held: "It is not within the jurisdiction of a court of equity to restrain by injunction the publication of an anticipated libel or slander, even though business and reputation are involved, and the intended publisher is not insolvent. An injunction beforehand in such a case would be an abridgment of the freedom of speech and of the press, guaranteed by article 1, section 2 of, the bill of rights in the Constitution of Ohio."

That was a case where some patent rights were involved, and where it was said that the rights of the plaintiff were injuriously affected by libelous circulars which were issued and printed by defendant in which his customers were threatened with suit if they should use his patents, and it was alleged that the defendant was irresponsible, and hence that there was no remedy at all at law, and an injunction was asked for, which was refused. This would seem to be in contradiction of some of the authorities which have been called to my attention, where threats have been made to attack or sue the customer of a party who should undertake to sell the products of a patent right, and where it was held that that was such an interference as would be protected against, being in the nature of a threat to do something which they did not intend in fact to do. It was alleged in the case just cited that they never intended to do any such thing, and made the threats without any foundation in fact, and after citing a number of cases, the judge comes to the constitutional question, and quotes section 2: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech or of the press,' and holds that the constitution inhibits the prevention of publications in advance. If that is the doctrine and true law of the case, then this court is precluded from granting relief where there is a libelous publication.

In this case, however, there is no insolvency alleged or charged on the part of the defendant, but it appears he is perhaps responsible, in a pecuniary sense, for the injuries which may result from his acts. We have had several cases in this court—one I remember very well in reference to a certain oil—where publications, said to be libelous and injurious to a man's business, were enjoined. That was a case with which I had something to do, and after running through the courts for two or three years, there was a violation of the injunction, and the man was brought in for contempt and punished, and an additional injunction was issued in that case against making the publications complained of. I do not know that the constitutional question was discussed upon the hearing in that case; at all events that was done in this court, and it resulted,

I believe, in the adjustment of the whole matter at the end of two or three years. I do not think it went to any other court. But is it the true doctrine that when a man libels another and threatens to continue it, a court of equity cannot interfere by injunction? It seems to me that such a doctrine is liable to many objections, and certainly can not be sustained, unless it can be said that the liberty of the press and the liberty of speech has been absolutely guaranteed by the constitution, and that this liberty is unbounded license to publish anything whatsoever, or else that public policy requires that rule of law to be established for the reason that to hold otherwise would make courts of equity censors over publications of the press and of what a man might say. Is it true that a court of equity cannot intervene to prevent the publication of any falsehood, though it may destroy the reputation and business of another, and even though the libelant is insolvent, or must the wrong be suffered and the publication made under the plea of a right to publish anything one may please or malice invent, and the injured party have no redress except in a suit at law for libel, or by way of a public prosecution as a crime, under a charge of libel?

I had almost concluded to hold, in view of the authorities that have been cited— and there are a great many of them which seem to sustain the proposition—that a libelous publication cannot be interfered with. That seems to be the doctrine announced by Judge Bradley in the 28 Federal Reporter, and of the old common law in England, as announced by Lord Cairns in the 10th Chancery Appeals, page 142, but the power of the courts of law and courts of equity have been so far extended in England that what is sought to be done in this case can be done there.

It is contended here, on the part of the plaintiff, that a court of chancery in England exercised the right to enjoin continuing libels before the judicature act of 1883. I incline to the opinion that such chancery jurisdiction was not established before that act. Such seems to be the opinion of Judge Bradley.

It is said further in this case, that, under our statute, whenever right and justice would seem to demand it, the court may intervene, and so our statute changes the rule of common law, and if it be the rule of common law, so as to permit this preventive jurisdiction, the same as it is now permitted in England. I had come to the conclusion at one time that I would do nothing in this case except to prevent the defendant from using the name of the plaintiff, either the name of "Christy" or "The Christy Clothing Company." It is pretty apparent the defendant never had any right to use these names, never had it by the terms of his contract, and it is apparent he did use them in making these publica tions by publishing Christy as bankrupt and as a failure in business, and publishing this

over and in the name of "The Christy Clothing Company." I will enjoin the use of that name by the defendant for the purpose of doing business under it; but it seems utterly impossible for me to stop, either legitimately or properly, with this only, because if the constitutional privilege is as claimed, or public policy is a claimed, that a man may publish what he chooses or say what he chooses, then how are we going to enjoin him from publishing whatever he chooses over the name of "The Christy Clothing Company," and using it in his business? It seems to me there is something radically wrong about that construction of the constitution. This privilege is not a constitutional license to abuse the freedom of speech ad libitum and without control. The defendant is not complaining that he is being restrained from publishing his "sentiments," but he objects to being enjoined from publishing what he is here confessing are falsehoods.

It is claimed that he who libels another is entitled to a jury trial, and that equity cannot and ought not to intervene, but our Supreme Court, in the 22d O. S., did hold that if a man was in partnership with another and sold out, not mentioning anything about the good will, and the remaining partner undertook to go forward with the business and use the partnership name in the business by advertising, by signs, by publications, that he should be prevented by injunction from doing that. That court did not seem to think there is any constitutional inhibition against a court of equity enjoining the use of a name, and restraining wrongful publications in relation thereto. But if such publications may be enjoined, why not the far more injurious and malicious publications complained of in the case at bar? Can it be that an advertisement that may not amount to actionable libel will be enjoined and one that does cannot be?

It is a well known doctrine of equity that a single naked trespass to land will not be enjoined, but a continued series of trespasses, and to avoid a multiplicity of suits, the courts of equity will enjoin. It does seem to me, as is said by one of the courts to which my attention has been called, where these libels are being threatened and continued, then a court of equity may intervene. It is said courts of equity may not intervene in cases of slander affecting title to property, unless the injury to reputation makes preventive relief proper and necessary That arises upon the same theory, it seems to me, as in the case of continued and re eated trespasses, and while the remedy for one publication of a libel might well be left to an action at law. yet where the purpose to publish thousands of hand bills and circulars, admittedly false and injurious, is clear, as in the present case, it would seem that equity by its preventive writ should stop it.

I am unable to say, therefore, that I will confine this injunction simply to the use of

this name, "The Christy Clothing Company," and the use of the name Christy—the defendant should not do business in that name. That I think certainly can be done and certainly ought to be done in view of the proof in this case, and it seems to the court ought to be done without any sort of question of the right to do it, because it has been done by our own Supreme Court, and is repeatedly done in various cases that have been pending in this court and elsewhere. But it seems to me to be idle to stop at that point and say, just as quick as it gets beyond such an injury, beyond anything that is less than a libel and attains to the magnitude of a libel, which may be four fold the injury of the other publications, you cannot interfere with it at all. I cannot think this would be right, and I do not believe it should be the law, and I will prevent that use of it in the case. There is no doubt about the facts here. The case stands on a demurrer to the petition and upon a motion to dissolve the injunction. It is true there are some facts pro and con, but there is no question about the fact that the defendant is doing substantially what it is claimed he is doing, and it does not seem just to say there is no relief in our courts of equity, and that a man must stand still and permit his reputation to be ruined, his credit to be destroyed as a business man, and he can have no remedy until after the thing is done, after his reputation is gone, after the wrong is consummated, and take his chances whether the defendant is solvent or insolvent. It seems to me logical and correct to say that a rich man ought not to have any greater rights as to publications than a poor man.

You may take an injunction preventing these publications, but I want to say in this connection, if there is a name. tacked on the lining of goods, or goods are marked, in the name of the Christy Clothing Company, I do not think the defendant should be required to take the goods to pieces and take out the name, or anything of that kind.

If this decision is not the law, I think it ought to be. There is no allegation in the petition of any consideration for the alleged promise, and the opinion is based upon the other allegations of the petition.

White, Johnson & McCaslin, for Plaintiff.
F. J. Wing and S. A. Schwab, for Defendant.